UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 3:11-cr-183 |
| | : | |
| vs. | : | Judge Timothy S. Black |
| | : | |
| PAUL DAVID MUSGRAVE (1), | : | |
| RAYMOND GOLDBERG (2), | : | |
| | : | |
| Defendants. | : | |

**ORDER THAT: (1) DEFENDANT MUSGRAVE'S MOTION TO DISMISS
(Doc. 56) IS GRANTED IN PART AND DENIED IN PART; (2) DEFENDANT
GOLDBERG'S MOTION TO DISMISS (Doc. 47) IS DENIED; (3) DEFENDANTS'
MOTIONS TO SEVER (Docs. 41 & 48) ARE GRANTED; AND (4) THE
MOTIONS FOR A BILL OF PARTICULARS (Docs. 50, 51) ARE DENIED**

This criminal case is before the Court on Defendant Goldberg's: (1) motion to

dismiss (Doc. 47); (2) motion to sever (Doc. 48); and (3) motion for a bill of particulars

(Doc. 51). Also pending before the Court are Defendant Musgrave's: (1) motion for a bill

of particulars (Doc. 50); and (2) motion to dismiss (Doc. 56).[1] The Government filed

responsive memoranda (Docs. 63, 68), and Defendant Goldberg replied (Doc. 69).

## I. BACKGROUND FACTS

On December 13, 2011, Defendants Musgrave and Goldberg were jointly indicted

in a 15-count indictment. (Doc. 6). Both Defendants were charged in Count I with

conspiracy to engage in wire fraud, bank fraud, and submitting false loan applications in

---

[1] Additionally, this Court previously granted Defendant Musgrave's motion to adopt and join
in Defendant Goldberg's motion to dismiss (Doc. 47), motion to sever (Doc. 48), and motion for
bill of particulars (Doc. 51) and Defendant Goldberg's motion to join in any and all motions
raised by other Defendants that affect him (Doc. 49). (*See* Doc. 70).

violation of 18 U.S.C. § 1349.  (*Id*.)  Defendant Musgrave was individually charged in the remaining 14 counts with wire fraud, bank fraud, and submitting false loan applications, in violation of 18 U.S.C. §§ 1343, 1344, and 1014, respectively.  (*Id*.)

## II.  STANDARD OF REVIEW

### A.  Motion to Dismiss

Motions to dismiss indictments are governed by Rule 12 of the Federal Rules of Criminal Procedure which states that "[a]ny defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion."  Fed. R. Crim. P. 12(b).  The Sixth Circuit guides district courts to "dispose of all motions before trial if they are capable of determination without trial of the general issue."  *U.S. v. Jones,* 542 F.2d 661, 665 (6th Cir. 1976).  Moreover, "Rule 12 vests the court with authority 'to determine issues of fact in such manner as the court deems appropriate.'"  *Id.* (quoting Notes of the Advisory Committee to Fed. R. Crim. P. 12, reprinted in 8 Moore, Federal Practice 12.01(3) at 12-8 (2d ed. 1976)).

The Federal Rules of Criminal Procedure "clearly envision that a district court may make preliminary findings of fact necessary to decide the questions of law presented by pre-trial motion so long as the court's findings on the motion do not invade the province of the ultimate finder of fact."  *Jones,* 542 F.2d at 664.  A defense raised in a motion to dismiss an indictment is "capable of determination if trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense."  *Id.* (citing *United States v. Covington,* 395 U.S. 57, 60 (1969)).

On a motion to dismiss an indictment, "the [c]ourt must view the [i]ndictment's factual allegations as true, and must determine only whether the [i]ndictment is 'valid on its face.'" *U.S. v. Campbell,* No. 02-80863, 2006 U.S. Dist. LEXIS 16779, at *2 (E.D. Mich. Apr. 6, 2006) (citing *Costello v. United States,* 350 U.S. 359, 363 (1956)). Accordingly, the Court must resolve factual issues in this case, such as they exist, in favor of the indictment.

### B.    Motion to Sever

Generally, where two "defendants are indicted together, joint trials are encouraged to promote efficiency and avoid the potential for inconsistent verdicts." *United States v. Parks*, 278 Fed. Appx. 527, 531 (6th Cir. 2008). The Sixth Circuit "strongly favors joint trials" in instances "where charges against multiple defendants are proven by using evidence from the same series of acts[.]" *Id.* However, "Rule 14(a) permits a district court to grant a severance if joinder 'appears to prejudice a defendant or the government.'" *United States v. Driver*, 535 F.3d 424, 427 (6th Cir. 2008). Nevertheless, "[e]ven where the risk of prejudice is high, 'less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Id.* Thus, separate trials are required "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *United States v. Walls*, 293 F.3d 959, 966 (6th Cir. 2002). A defendant seeking severance bears "a heavy burden of showing specific and compelling prejudice[.]" *United States v. Harris*, 9 F.3d 493, 500 (6th Cir. 1993).

A decision to grant or deny a motion to sever is left to the discretion of the trial court. *United States v. Lopez*, 309 F.3d 966, 971 (6th Cir. 2002). The Court's determination of prejudicial joinder is entitled to great deference upon review. *United States v. Breinig*, 70 F.3d 850, 853 (6th Cir. 1995).

## III.    ANALYSIS

### A.    Motions to Dismiss

#### *1.    Goldberg's motion to dismiss*

Defendant Goldberg seeks dismissal of Count One of the indictment – specifically, the single count of conspiracy. Defendant was charged with conspiracy to commit wire fraud (with intent to defraud) contrary to 18 U.S.C. § 1343;[2] conspiracy to commit bank fraud (with intent to defraud) contrary to 18 U.S.C. § 1344;[3] and conspiracy to submit a false loan application (for the purpose of influencing) contrary to 18 U.S.C. § 1014.[4]

---

[2] To commit wire fraud, an offender must execute a scheme to defraud and use wires in furtherance of that scheme. *United States v. Daniel*, 329 F.3d 480 (2003). "A scheme to defraud includes any plan or course of action by which someone uses false, deceptive, or fraudulent pretenses, representations, or promises to deprive someone else of money." *United States v. Jamieson*, 427 F.3d 394, 402 (6th Cir. 2005).

[3] To commit bank fraud, an offender must knowingly execute, or attempt to execute, a scheme or artifice: (1) to defraud a financial institution, or (2) to obtain moneys owned by a financial institution, by means of false or fraudulent pretenses, representations, or promises. 18 U.S.C. § 1344.

[4] To violate 18 U.S.C. Section 1014, an offender must submit a false loan application for the purpose of influencing the action of the federally insured financial institution. The indictment must sufficiently allege: (1) the lending institution's deposits were federally insured; (2) the defendant submitted false statements to the institution; (3) the defendant knew the statements were false; and (4) the defendant made the statements for the purpose of influencing the institution's action upon an "application advance . . . commitment, or loan." *United States v. Wells*, 519 U.S. 482, 484 (1997).

Defendant argues that Count One should be dismissed because: (1) the indictment fails to state an offense; and (2) the indictment "fails to sufficiently establish the intent required to form culpability under the respective statutes." (Doc. 47 at 1). Specifically, Defendant Goldberg argues that the indictment does not allege that the false statements were made for the purpose of influencing the institutions actions upon application for the loan.

The Court finds, contrary to Defendant's argument, that the indictment clearly states, in a plain, concise, and definite written statement, an offense consistent with the established elements of the crime of conspiracy, and, further, that probable cause was established by the grand jury's return of a true bill. To address Defendant Goldberg's argument directly, the indictment states that "Goldberg . . . did knowingly, willfully and unlawfully conspire . . . to . . . submit . . . false loan applications [statements] for the purpose of influencing the action of MFSB, an FDIC insured financial institution and SBA." (Doc. 6 at ¶ 17(c)). Specifically, "Goldberg, would develop a plan to prepare, manipulate and submit certain false, fraudulent and misleading documents to MFSB in connection with a SBA 7(a) loan application." (*Id.* at ¶ 22). Additionally, "on or about March 25, 2009, the defendants caused 'B.N' to falsely certify a commercial invoice . . . in the amount of $1,575,532. This document was later presented to MFSB." (*Id.* at ¶ 25(y)).

Accordingly, Defendant Goldberg's motion to dismiss is denied.

## 2.    *Musgrave's motion to dismiss*

Defendant Musgrave contends that the indictment should be dismissed because: (1) the indictment is multiplicitous; (2) the indictment contains surplusage; (3) the Government improperly used his proffer against him, and; (4) the Government improperly delayed indicting him.  The Court will address each argument in turn.

### a.    **Multiplicity**

Defendant contends that Counts 2 through 12 of the indictment are multiplicitous and should be dismissed.

"'Multiplicity' involves charging the same criminal offense in two or more counts of an indictment or information." *United States v. Ragland*, 3 Fed. Appx. 279, 284 (6th Cir. 2001).  "The district court has discretion in deciding whether to require the prosecution to elect between multiplicitous counts especially when the mere making of the charges would prejudice the defendant with the jury." *United States v. Throneburg*, 921 F.2d 654, 657 (6th Cir. 1990).  Prejudice can be mitigated "by jury instructions that require the jury to consider each statement separately," or by "the submission of all counts on a single verdict form, grouped in such a way that each grouping of multiplicitous counts is contained on the same verdict form." *United States v. McCafferty*, No. 1:10cr387, 2011 U.S. Dist. LEXIS 33567, at *15 (E.D. Ohio Mar. 16, 2011).

As rules of pleading, the defects of duplicity and multiplicity are not fatal to an indictment but may be cured by reformulation. In determining whether there is duplicity or multiplicity the decisive criteria are legislative intent and separate proof. When legislative intent is ambiguous, the rule of lenity prescribes that doubt will be resolved against turning a single transaction into multiple offenses . . . . Courts rejecting duplicity challenges to multiple-predicate counts, however, often premise their rulings on the condition that later augmented jury instructions will adequately protect the defendant against the risk of nonunanimous verdict.

*United States v. Duncan*, 850 F.2d 1104, 1108, n. 4 (6th Cir. 1988). *See also United States v. Kakos*, 483 F.3d 441, 443 (6th Cir. 2007) ("Proper jury instructions can mitigate the risk of jury confusion and alleviate the doubt that would otherwise exist as to whether all members of the jury had found the defendant guilty of the same offense.").

The ban against duplicitous indictments is premised on four primary concerns: (1) the indictment may fail to give defendants adequate notice of the nature of the charges against him; (2) it may subject the defendant to prejudicial evidentiary rulings; (3) it may result in an inadequate trial record to protect against subsequent prosecution for the same offense; and (4) such indictment presents a risk that the jury may have convicted a defendant by a nonunanimous verdict. *United States v. Kimberlin,* 781 F.2d 1247, 1250 (7th Cir. 1985).

Rule 7(c) permits a prosecutor to allege "in a single count . . . that the defendant committed [the offense] by one or more means." Fed. R. Crim. P. 7(c). Courts have noted that it is appropriate to charge separate criminal acts in one count where the acts are

part of a single conspiracy or continuing scheme. *United States v. Kelley*, 461 F.3d 817, 830 (6th Cir. 2006).[5]

The Government concedes that based upon an administrative oversight, Count 6 inadvertently repeats verbatim the allegation in Count 5 and should be dismissed. (Doc. 68 at 4). The Government further concedes that Counts 2-5 should be merged into a single count due to the fact that they each allege different facts, all of which occurred on February 6, 2009. (*Id.*) Similarly, Counts 7 and 8 should be merged into a single count due to the fact that both allege facts occurring on February 9, 2009. (*Id.*)

The stipulated dismissal of Count 6 and the merger/election of a single count encompassing Counts 2-5 and Counts 7-8 cure all multiplicity issues. Counts 9-12 each allege acts occurring on separate dates and times, so there is no multiplicity issue.

### b. Small Business Administration ("SBA Regulations")

Next, Defendant contends that the indictment should be dismissed, or alternatively, paragraphs 3 and 24 should be stricken as surplusage pursuant to Fed. R. Crim. P. 7(d) and 12(b)(2). Specifically, Defendant argues that these two paragraphs of the indictment "implicitly or expressly claim [] that Mr. Musgrave violated certain laws and SBA regulations . . . [when] some of the acts that the government claims were violations, were,

---

[5] *See United States v. Stewart*, 433 F.3d 273, 319 (2nd Cir. 2006) (counts of an indictment charging "several different types of fraudulent conduct" are not duplicitous because they are not different offenses but rather different means of committing a single offense).

in fact, not violations." (Doc. 56 at 5). The motion further claims that paragraph 3 incorrectly states that Mr. Musgrave was obligated to inform Mutual Federal Savings Bank ("MFSB") or the SBA about the fact that he owned Intercontinental Trading, BVI ("ITBVI"). Additionally, Defendant claims that paragraph 24 "implies that . . . Mr. Musgrave in particular, not the bank[,] was responsible for providing the correct and full information about the borrowers and the transaction to the SBA." The Government argues that these claims misquote and mischaracterize the plain language of the indictment.

A court may, within its discretion, strike surplusage from the indictment pursuant to Fed. R. Crim. P. 7(d). *United States v. Kemper*, 503 F.2d 327, 329 (6th Cir. 1974). A court should grant a motion to strike surplusage "only where it is clear that the language is irrelevant and prejudicial." Furthermore, the Sixth Circuit has stated that Rule 7(d) "makes the striking of surplusage permissive, but not mandatory. The Rule is properly invoked when an indictment contains nonessential allegations that could prejudicially impress the jurors." *Id.* "[T]he standard under Rule 7(d) has been strictly construed against striking surplusage." *Id.*

First, neither paragraph 3 nor 24 of the indictment contain any reference to any so-called SBA rules, regulations, or laws. Both paragraphs simply set forth factual allegations which the Government must prove at trial:

Para 3:      At all times relevant to this Indictment, Intercontinental Trading BVI ("ITBVI") was a corporation formed in the British Virgin Islands which was owned and operated by the defendant RAYMOND GOLDBERG. ITBVI's principal place of business was Level 15, Raffles Plaza, Raffles Square, Singapore. ITBVI was listed as holding a 19% ownership interest in DITR. The defendant PAUL DAVID MUSGRAVE failed to reveal the defendant RAYMOND GOLDBERG's connection with ITBVI to any participating lender until just prior to the subject loan closing. The defendant PAUL DAVID MUSGRAVE also never revealed the fact of this relationship to the SBA.

Para 24:     It was further part of the conspiracy, that defendant PAUL DAVID MUSGRAVE misrepresented to, and concealed from MFSB and SBA defendant RAYMOND GOLDBERG's conflict of interest caused by his true ownership and management interest in ITBVI (a co-owner of DITR) and RSP (the designated seller of subject tire shredding equipment and machinery to DITR) at the time the 7(a) loan application was submitted.

By listing ITVBI as a 19% part owner of DITR on his loan application, the Government alleges that Defendant Musgrave engaged in deceptive and fraudulent acts and intentionally mislead both MFSB and SBA. ITBVI was allegedly nothing more than a straw company created by his co-conspirator, Mr. Goldberg, to deceive and defraud MFSB and SBA. It was through this fraudulent act that Defendants concealed the fact that co-defendant Goldberg was *de facto* acting as both the buyer and seller of the recycling equipment Defendant Musgrave hoped to purchase with the SBA 7(a) guaranteed loan proceeds.

Without first obtaining the SBA's loan guarantee, MFSB would not have approved

-10-

and disbursed the $1,715,650, in loan proceeds to Defendant Musgrave.  Accordingly, the

Government argues that the intent to defraud element is met with respect to the wire and

bank fraud statutes.  Making a false statement intended to influence the action of a

financial institutional is also an element of the making a false statement on a loan

application.  Each of these three crimes are predicates for the Count 1 conspiracy with

which both Defendants have been charged.

Under 13 CFR § 120.160, the SBA may question the details associated with

holders of less than 20% ownership interests in a 7(a) SBA loan applicant companies.

(Doc. 68, Ex. A).  Accordingly, Defendant Musgrave was on-notice of the link between

his MFSB loan application and the SBA 7(a) guaranteed loan program.  This fact is

supported by the fact that Defendant Musgrave completed and filed multiple SBA forms

and documents which were attached to his loan application.  (*Id.*, Exs. B, C, D, E, F, G).

As alleged, Defendant Musgrave was well aware that both MFSB and SBA would be

relying on the accuracy and truthfulness of his various representations provided in the

loan application in determining whether to guarantee and ultimately approve his loan.

Accordingly, Defendant Musgrave's request to dismiss on the grounds of

insufficient or incompetent evidence is denied.

### c.       Proffer Agreement

Next, Defendant Musgrave argues that the Government improperly used his

proffer against him.  On July 12, 2011, Mr. Musgrave was debriefed pursuant to a proffer

letter that stated, in relevant part, "no statement made, or other information provided, by [Mr. Musgrave] during the proffer session will be used against him in any criminal case that may be instituted by the United States Government." (Doc. 56, Ex. D).[6] In reliance on that assurance, Mr. Musgrave participated in a four-hour debriefing with federal agents. (Doc. 56 at 13).

Mr. Musgrave contends that the Government breached its proffer agreement by directly using evidence gleaned from said proffer session to secure his indictment. However, his argument is based solely on speculation and conjecture. (*See, e.g.,* Doc. 56 at 12: "The Government *Probably* Used Informally Immunized Statements . . . ." (emphasis added)).

The Government maintains that it did not rely on any proffer evidence to secure Defendant Musgrave's indictment because it already possessed pre-existing, documented, and legitimate evidentiary sources. (Doc. 68 at 11-16). The Court has no reason to doubt the Government's representation, and Defendant fails to produce any evidence indicating otherwise.[7] Accordingly, Defendant Musgrave's request for dismissal based upon misuse of proffer evidence is denied.

---

[6] The conditions which constitute a breach of an informal immunity agreement are governed by the agreement itself. *United States v. Finch*, 964 F.2d 571, 574 (6th Cir. 1992).

[7] Defendant Musgrave requests the opportunity to amend his argument, if necessary, after he receives his 302. (Doc. 56). Defendant's request is hereby granted.

#### d.     Delayed Indictment

Finally, Defendant Musgrave argues that the Government improperly delayed indicting him because it took the Government three years to secure the indictment (the alleged crime occurred in late 2008 and early 2009).  The indictment alleges that on or about November 1, 2008, both Defendants entered into a conspiracy to commit wire fraud, bank fraud, and submit a false loan application in violation of 18 U.S.C. § 1349.  On October 5, 2010, the SBA's Office of Inspector General formally opened a criminal investigation.  (Doc. 68 at 16).  On April 28, 2011, investigators initially attempted to interview Defendant Musgrave at his Waxhall, North Carolina residence.  (*Id.*)  On May 4, 2011, investigators interviewed Defendant Musgrave in Dayton, Ohio.  (*Id.*)  On July 12, 2011, the subject proffer session was conducted.  (*Id.*)  Subsequently, his then defense attorney, David Williamson, requested an opportunity to supplement the proffer.  (*Id.* at 17).  On September 16, 2011, Mr. Williamson provided the follow-up materials to the Government.  (*Id.*)  On December 13, 2011, the grand jury returned the 15-count indictment.  (*Id.*)  Accordingly, a period of 14 months transpired between the date SBA-OIG opened the criminal investigation until formal charges were asserted against the Defendants.  (*Id.*)

Pursuant to Fed. R. Crim. P. 48(b)(1) "[t]he court may dismiss an indictment, information, or complaint if unnecessary delay occurs in: (1) presenting a charge to a grand jury."  Additionally, "the Due Process Clause of the U.S. Const. Amed. *[sic]* V.

would require dismissal if it were shown . . . that pre-indictment delay caused substantial prejudice to [Defendant's] rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused." *United States v. Rogers*, 118 F.3d 466, 474-476 (6th Cir. 1997). When determining whether pre-indictment delay warrants dismissal of the indictment, the Sixth Circuit requires the Defendant to prove a two-part test of "substantial prejudice to the Defendant" and "the prosecution's intent to gain a tactical advantage." *Id.*

In the instant case, the defense has failed to set forth any factual basis to establish either bad faith on the prosecution's part or any "actual prejudice" suffered by the Defendant. Pre-indictment delay of up to six years has been held not to justify dismissal of indictment absent a showing of any actual prejudice. *United States v. Jackson*, 473 F.3d 660, 664-68 (6th Cir. 2007). The only evidence of prejudice provided is the advancing age of two potential witnesses: Gary Enz and Gene McQuinn. However, there is no factual evidence that indicates their respective ages or what impact, if any, the passage of 14 months has had on either witness's memory or ability to participate at trial. *See, e.g.*, *United States v. Brown*, 498 F.3d 523, 532 (6th Cir. 2007) (courts generally refuse to find the requisite degree of prejudice based on unsubstantiated claims that a delay caused the defendant's or witness's memories to diminish). "It is well-established that a delay resulting from investigative efforts 'does not deprive a defendant of due process, even if his defense may have been somewhat prejudiced by the lapse of time.'"

*Rogers*, 118 F.3d at 476.

Accordingly, Defendant Musgrave's request for dismissal based upon a delayed indictment is denied.

### B.     Motion to Sever

Defendant Goldberg argues that this Court should sever the trial pursuant to Rule 14(a) because consolidation will prejudice him.[8]  Specifically, Defendant argues that the overwhelming majority of evidence presented will pertain to alleged criminal conduct of his co-defendant.  (Doc. 48 at 1).  Therefore, Defendant Goldberg argues that even with a limiting instruction, there is a high probability that he will be irreversibly prejudiced by the weight of evidence against his co-defendant, and the volume and nature of the counts weighing only against his co-defendant.  (*Id.*)  Additionally, Defendant Goldberg submits that he will be irreversibly prejudiced by consolidation as there exist statements by and from his co-defendant which are against Goldberg's interest and which may be admitted at trial.  (*Id.*)  Finally, Defendant argues that he may be prejudiced if he is denied the right to admit exculpatory evidence in the form of testimony from his co-defendant who may choose not to testify at a joint trial.  (*Id.*)

The Sixth Circuit has consistently held that "[i]n order to prevail on a motion for

---

[8]  Defendant Musgrave filed an *ex parte* motion to sever. (Doc. 41). While the Court will not expound upon the arguments made therein, it relies in large part on the motion's compelling arguments.  It is important to note, however, that the general legal arguments made in Defendant Musgrave's motion were essentially identical to those made in Defendant Goldberg's motion. Accordingly, the Government had an adequate opportunity to respond.

severance, a defendant must show compelling specific and actual prejudice from a court's refusal to grant the motion to sever." *United States v. Lupo*, 463 F.3d 445, 473 (6th Cir. 2006).  Despite the strong preference for joint trials, Rule 14 vests the Court with discretion to grant a severance or to "provide whatever other relief justice requires" if a defendant or the government is prejudiced by joinder.

Although there is a strong body of case law against severance, this case raises a significant problem under *Bruton v. United States*, 291 U.S. 123 (1968),[9] and, as such, the co-defendants' cases are so exceptionally mutually antagonistic to be irreconcilable and unfairly prejudicial.  In order to prevent a violation of the Sixth Amendment's Confrontation Clause, and to ensure the Fifth Amendment's due process protections, the Court finds that severance is necessary.

Accordingly, Defendants' motions to sever (Docs. 41 and 48) are hereby granted.

**C.    Motions for Bill of Particulars**

Both Defendants filed motions for a bill of particulars.  (Docs. 50, 51).

---

[9] Bruton and a co-defendant, Evans, were tried together.  A government witness introduced evidence of a confession from Evans, against Evans, that also implicated Bruton.  The trial judge gave a curative instruction prohibiting the jury from considering Evans' extrajudicial statements. Evans was not made available for cross examination by Bruton.  The Supreme Court held that "because of the substantial risk that the jury, despite instructions to the contrary, looked to the incriminating extrajudicial statements in determining petitioner's guilt, admission of Evans' confession in this joint trial violated [Bruton's] right of cross-examination secured by the Confrontation Clause of the Sixth Amendment."  Notwithstanding the trial court's attempt to limit the impact of statements against Evans, such statements could lend "substantial, perhaps even critical, weight to the Government's case in a form not subject to cross-examination, since Evans did not take the stand." *Id.* at 127-28.

The Sixth Circuit summarizes the standards applicable to a motion for a bill of particulars as follows:

> Rule 7(f) states that "the defendant may move for a bill of particulars." Fed. R. Crim. P. 7(f). The purpose of a bill of particulars is to inform the defendant of the charges against him "if this is necessary to the preparation of the defense, and to avoid prejudicial surprise at the trial." 1 Charles Alan Wright, Federal Practice & Procedure § 129 (3d ed. 1999); *see United States v. Birmley*, 529 F.2d 103, 108 (6th Cir. 1976). Thus, the test in ruling on a motion for a bill of particulars is whether providing such details is necessary to the preparation of the defense and avoidance of prejudicial surprise. *See* Federal Practice & Procedure § 129l. The bill of particulars is not intended as "a means of learning the government's evidence and theories." *Ibid.* A defendant is not entitled to a bill of particulars if the purpose of the bill is to obtain a list of the Government's witnesses or to discover all of the over acts that might be proven at trial. *See United States v. Largent*, 545 F.2d 1039, 1043 (6th Cir. 1976).

*United States v. Musick*, 291 F. App'x 706, 724 (6th Cir. 2008). In determining whether to order the Government to provide a bill of particulars, the Court may consider such factors as "the complexity of the crime charged, the clarity of the indictment, and the degree of discovery and other sources of information otherwise available to the defendants." 1 Charles Alan Wright, Federal Practice & Procedure § 130 (4th ed. 2009). Therefore, where an indictment has set out the charges in sufficient detail, no bill of particulars is necessary.

A bill of particulars is unnecessary in this case because the indictment is sufficiently specific. Defendants can readily "discern the nature of the charges pending

against [them] or the time frame in which the alleged acts occurred." *United States v. Martin*, 822 F.2d 1089, 1087 (6th Cir. 1987). To the extent that the Court must forecast the likely nature of proof at trial, the Court observes that the Government has provided extensive discovery and supplied details in the indictment. The motions appear to inappropriately seek "a more detailed description of the Government's proof" against them. *United States v. Ridley*, 199 F. Supp. 2d 704, 708 (S.D. Ohio 2001). Defendants have not demonstrated that the details sought are essential to their defense or to avoid surprise, and their preparation for trial will not be compromised by the level of detail provided in the indictment. Moreover, Defendants have not established that they face a threat of double jeopardy based on any alleged deficiencies in the indictment as it currently stands. *United States v. Birmley*, 529 F.2d 103, 108 (6th Cir. 1976).

Accordingly, the motions for a bill of particulars (Docs. 50, 51) are denied.

## IV.   CONCLUSION

For the foregoing reasons, the Court finds that:

1.   Defendant Goldberg's motion to dismiss (Doc. 47) is **DENIED**;

2.   Defendants' motions to sever (Docs. 41, 48) are **GRANTED**;

3.   Defendants' motions for a bill of particulars (Docs. 50, 51) are **DENIED**; and

4.   Defendant Musgrave's motion to dismiss (Doc. 56) is **GRANTED IN PART** and **DENIED IN PART**. Specifically, Count 6 is dismissed and Counts 2-5 and 7-8 are merged into single counts, respectively.

**IT IS SO ORDERED.**

Date: 9/13/12

        *s/ Timothy S. Black*
Timothy S. Black
United States District Judge