UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 3:11-cr-183-1 |
| | : | Judge Timothy S. Black |
| vs. | : | |
| | : | |
| PAUL DAVID MUSGRAVE, | : | |
| | : | |
| Defendant. | : | |

**ORDER DENYING DEFENDANT'S MOTIONS IN LIMINE AND RENEWED MOTION TO DISMISS (DOC. 83)**

This criminal case is before the Court on Defendant Paul David Musgrave's Motions in Limine. (Doc. 83). The Government filed a Response in opposition to Defendant's Motions. (Doc. 86). While the Court now rules upon the Motions in Limine, because a ruling on a motion in limine is "subject to change as the case unfolds," this ruling constitutes a preliminary determination in preparation for trial. See *Luce v. United States*, 469 U.S. 38, 41 (1984); *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994).

### A.  BACKGROUND

The Indictment in this case generally alleges that Defendant Paul David Musgrave ("Musgrave"), along with certain business associates, created a company named Dayton International Tire Recycling ("DITR") with the intent of constructing and operating a tire recycling plant in Troy, Ohio. Musgrave held an eighty-one percent ownership interest in DITR. Intercontinental Trading BVI ("ITBVI"), an entity formed in the British Virgin

Islands, owned the remaining nineteen percent of DITR. Raymond Goldberg ("Goldberg") owned and operated ITBVI and also owned and operated an Australian entity named Rubber Solutions Pty, Ltd ("RSP").

DITR, after its formation, entered into an agreement to purchase tire shredding and recycling equipment from RSP. To pay for the equipment, Musgrave sought to obtain a loan through Mutual Federal Savings Bank ("MFSB") in Troy, Ohio. The loan was to be partially guaranteed by the Small Business Administration ("SBA"). In an effort to secure approval of the loan, the Government alleges that Musgrave falsely certified information concerning cash injections allegedly made by ITBVI and himself, failed to timely disclose the relationship between Goldberg, ITBVI, DITR and RSP, and allegedly falsified commercial invoices and shipping documents.

On December 13, 2011, the Government jointly indicted Defendants Musgrave and Raymond Goldberg in a 15-count indictment.[1] (Doc. 6). Both Defendants were charged in Count I with conspiracy to engage in wire fraud, bank fraud, and submitting false loan applications in violation of 18 U.S.C. § 1349. (*Id*.) Defendant Musgrave was individually charged in the remaining 14 counts with wire fraud, bank fraud, and submitting false loan applications in violation of 18 U.S.C. §§ 1343, 1344, and 1014, respectively. (*Id*.) Musgrave now moves for an order excluding certain evidence at trial and seeks to renew a previously filed Motion to Dismiss.

---

[1] The Government elects to dismiss Counts 2, 3, 4, 6 and 8 of the Indictment.

## B.  MOTION IN LIMINE - EXPERT TESTIMONY

Musgrave first moves for an order excluding the testimony of a purported Government expert witness, Kandace Zelaya, Esq.  The Government proposes to call Zelaya as an expert witness to assist the jury in understanding "a system of highly complex, technical and specialized rules, regulations, procedures and policies [which] govern the administration of the Small Business Administration's 7(a) guaranteed loan program."  The Government also proposes that Zelaya will offer opinion testimony to the extent that the SBA "would never have approved" the subject loan if certain information had been disclosed, or perhaps timely disclosed.  Zelaya's opinions are to be based on her experience and knowledge of the Small Business Act and the SBA's policies and procedures.

Musgrave argues that Zelaya's proposed testimony concerning the standard operating procedures of the SBA is not proper expert witness testimony because it would not assist the trier of fact to understand the evidence or issues in the case.  Musgrave also contends that Zelaya anticipated testimony that the SBA would not have approved the loan if it knew certain information is speculative and inappropriate because Zelaya was not involved in the particular loan transaction at issue in this case.  Finally, Musgrave argues that Zelaya's testimony should also be excluded pursuant to Fed. R. Evid. 403.

Initially, the Court notes that a key relevant inquiry at trial includes the materiality of the information Musgrave allegedly misrepresented or concealed.  The jury instructions proposed by both parties demonstrate that a key issue that jury must consider

in this case is whether the facts misrepresented or concealed were material facts.  "In general, a false statement is material if it has 'a natural tendency to influence, or [is] capable of influencing, the decision of the decisionmaking body to which it was addressed.'"  *Neder v. United States*, 527 U.S. 1, 16 (1999) (citations omitted) (alteration in original).  Thus, Zelaya's testimony concerning the materiality of the information allegedly misrepresented or concealed is certainly relevant.

Musgrave presents no argument that Zelaya is not competent to present opinion testimony, though it is not entirely clear whether Zelaya's testimony properly falls within the ambit of "expert" testimony or lay opinion testimony.  *See United States v. Kelley*, 615 F.2d 378, 379-80 (5th Cir. 1980) (concluding that a bank assistant vice-president's testimony on the issue of "whether information on an application [for a loan] had the capacity to influence the bank's decision on granting the loan" was proper expert testimony because the witness had "special knowledge" of the bank's "loan policy"); *but see United States v. Whaley*, No. 3:10-CR-169, 2012 WL 5463300, *1 (E.D. Tenn. Nov. 8, 2012) (concluding that opinion testimony "based upon the witnesses' own particularized knowledge gained from their familiarity with their employer banks' underwriting processes and lending policies" was proper lay witness opinion testimony under Fed. R. Evid. 701, and not expert testimony under Fed. R. Evid. 702).

Instead, Musgrave argues that Zelaya's expected testimony will not assist the trier of fact in understanding the evidence or in determining an issue in fact, requirements for the admissibility of opinion testimony under both Fed. R. Evid. 701 and 702.

The Court concludes that Zelaya's testimony, insofar as it addresses materiality of the facts allegedly misrepresented or concealed, will assist the jury.  Zelaya's opinions in this regard, based on her understanding and knowledge of the SBA's underlying policies and procedures, will assist the jury in understanding whether, and why, certain information is material in processing loan applications..

With regard to Musgrave's contention that the jury does not need assistance reading and understanding the text of the SBA's policies or procedures, the Court does not agree.  Moreover, the Court notes that Zelaya's testimony concerning the SBA's policies and procedures will also establish the basis upon which she forms her ultimate opinions concerning materiality of the facts allegedly misrepresented or concealed.  In other words, Zelaya's knowledge of the SBA's policies and procedures forms the basic foundation of her opinion testimony.  Moreover, Zelaya appears to possess significant familiarity and knowledge concerning the SBA's policies and procedures beyond that of an ordinary juror which could assist the jury in understanding the loan approval process and the information typically considered in that process.  Thus, Musgrave's contention in this regard is not well-taken.

Next, Musgrave argues that because Zelaya had no personal involvement in processing Musgrave's loan application, her opinion testimony is improper.  However, the mere fact that Zelaya had no involvement in the particular loan transaction does not preclude her from offering an opinion as to whether certain information was material in processing loans.  Other courts have reached the same conclusion.  *See Kelley*, 615 F.2d

at 379-80 (concluding that opinion testimony of a bank assistant vice-president on the issue of "whether information on an application [for a loan] had the capacity to influence the bank's decision on granting the loan" was proper despite the fact the witness did not approve the loan); *Whaley*, 2012 WL 5463300 at *1 (concluding that opinion testimony on the issue of materiality was "properly admitted" despite the fact that the witnesses were not "involved with the loan transactions at issue"). Accordingly, the Court finds Musgrave's argument in this regard not well-taken.

Finally, Musgrave argues that Zelaya's opinion must be excluded as prejudicial, misleading and cumulative. As set forth above, the Court disagrees with Musgrave's contention that Zelaya's anticipated testimony "serves no legitimate purpose" and would "add nothing to the trial." Further, the Court cannot conclude that risk of unfair prejudice outweighs the probative value of Zelaya's testimony simply because Zelaya is an attorney. Zelaya's opinion testimony does not involve opinions on legal issues, and, instead, involves an opinion concerning a key *fact* issue for the jury's determination, *i.e.*, materiality of particular facts to a lending decision.

To address Musgrave's other concerns about the weight the jury may give Zelaya's testimony simply because she is an attorney, the Court is prepared to instruct the jury concerning its assessment of witness testimony, including opinion testimony. Additionally, the Court notes that defense counsel will have the opportunity to cross-examine Zelaya.

At this time, the Court finds no serious concern that Zelaya's testimony will result in confusing the issues or misleading the jury. Insofar as Musgrave contends that the Government presenting Zelaya's testimony amounts to needlessly presenting cumulative evidence, the Court intends to keep a watchful eye toward not burdening the jury with needlessly cumulative evidence. The Government represents that Zelaya will testify at or near the end of the Government's anticipated case-in-chief, and, therefore, the Court can adequately address this concern at that time.[2]

Accordingly, for the foregoing reasons, Musgrave's Motion in Limine concerning the anticipated testimony of Kandace Zelaya, Esq., is **DENIED**.

## C.  RENEWED MOTION TO DISMISS

Next, Musgrave seeks to renew a previously filed Motion to Dismiss arguing that the Government has "incorrectly taken the position that Mr. Musgrave did not disclose Mr. Goldberg's dual role." (Doc. 83, PAGEID 477).

Courts may dismiss an indictment with prejudice pursuant to its supervisory powers "even 'if the [government's] conduct does not rise to the level of a due process violation[.]'" *United States v. Struckman*, 611 F.3d 560, 574 (9th Cir. 2010) (citing *United States v. Chapman*, 524 F.3d 1073, 1084 (9th Cir.2008)). "Under certain

---

[2] The Court does wonder why Zelaya's testimony, if truly designed to assist the jury in understanding "the highly complex, technical and specialized rules, regulations, procedures and policies [of] the SBA's 7(a) guaranteed loan program," will come late in the case, after the jury has sat through days of testimony regarding the highly complex, technical and specialized rules, regulations, procedures and policies, without benefit of expert explanation. Accordingly, N.B.: In limine rulings are preliminary, and the district court may change its ruling at trial for any reason it deems appropriate. *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994).

circumstances, courts may exercise their supervisory power to dismiss a grand jury indictment." *United States v. Rozin*, 552 F.Supp.2d 693, 699 (S.D. Ohio 2008) (citing *United States v. Streebing*, 987 F.2d 368, 372-73 (6th Cir. 1993)).  The Court's supervisory power stems from a court's "inherent ability . . . to formulate procedural rules not specifically required by the Constitution or Congress to supervise the administration of justice." *Id*.

"However, while a court may use its supervisory power to dismiss an indictment, dismissal is, generally speaking, a disfavored remedy." *Id*. (citing *United States v. Rogers*, 751 F.2d 1074 (9th Cir.1985)).  To dismiss an indictment pursuant to the Court's supervisory powers, "there must be a showing of 'demonstrated and longstanding prosecutorial misconduct' as well as a showing of substantial 'prejudice to the defendant.'" *Id*.

Here, Musgrave fails to make the required showing.  As the Government points out, the Indictment alleges that Musgrave "failed to reveal [Goldberg's] connection with ITBVI to any participating lender *until just prior to the subject loan closing*," (emphasis added), not that Musgrave failed to outright disclose such information.  Accordingly, the Court **DENIES** Musgrave's renewed Motion to dismiss.

### D.  REMAINING ARGUMENTS

Based on the Government's representations, the Court **DENIES as moot** Musgrave's remaining arguments concerning hearsay statements by Goldberg and the dismissal of counts suffering from duplication and/or multiplicity issues.

## E.  CONCLUSION

Based on the foregoing, Musgrave's Motions in Limine (Doc. 83) are **DENIED**, including Musgrave's Renewed Motion to Dismiss.  Pursuant to the Government's request, Counts 2, 3, 4, 6 and 8 of the Indictment are hereby **DISMISSED**.

**IT IS SO ORDERED.**

Date:  1/16/13                                              *s/ Timothy S. Black*
                                                           Timothy S. Black
                                                           United States District Judge