UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 3:11-cr-183-1 |
| | : | |
| vs. | : | Judge Timothy S. Black |
| | : | |
| PAUL DAVID MUSGRAVE, | : | |
| | : | |
| Defendant. | : | |

**DECISION AND ENTRY DENYING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL AND FOR A NEW TRIAL (Doc. 135)**

This criminal case is before the Court on the Motion of Defendant Paul David Musgrave ("Musgrave") for Judgment of Acquittal and Motion for a New Trial. (Doc. 135). The Government filed an Opposition to Musgrave's Motions. (Doc. 146). Musgrave filed a Reply in Further Support of his Motion for Judgment of Acquittal and Motion for a New Trial. (Doc. 150). Musgrave's Motions are now ripe for decision by the Court.

### I. BACKGROUND

The Government charged Musgrave in a fifteen count Indictment generally alleging that Musgrave, along with certain business associates, including co-conspirator Raymond Goldberg ("Goldberg"), created a company named Dayton International Tire Recycling ("DITR") with the intent of constructing and operating a tire recycling plant in Troy, Ohio, and then conspired to defraud the Small Business Administration ("SBA") and Mutual Federal Savings Bank ("MFSB") by misrepresenting and concealing material facts in order to obtain approval of a loan and distribution of the loan proceeds.

Musgrave held an eighty-one percent ownership interest in DITR. An entity named Intercontinental Trading BVI ("ITBVI") owned the remaining nineteen percent of DITR.

Goldberg owned and operated ITBVI. Goldberg also owned and operated an Australian company named Rubber Solutions.

DITR, after its formation, entered into an agreement to purchase tire shredding and recycling equipment from Rubber Solutions. To pay for the equipment, Musgrave sought to obtain a loan through MSFB in Troy, Ohio. The loan was to be partially guaranteed by the SBA. In an effort to secure approval of the loan, the Government alleged that Musgrave falsely certified information concerning cash injections allegedly made by ITBVI and himself and failed to timely disclose to MSFB and the SBA Goldberg's ownership of ITBVI. Musgrave also allegedly falsified invoices and shipping documents to deceive the bank into believing all of the equipment at issue had shipped from Australia.

The Indictment charged Musgrave and co-conspirator Goldberg with one count of conspiracy to engage in wire fraud, bank fraud, and submitting false loan applications in violation of 18 U.S.C. § 1349. The Indictment also charged Musgrave with eleven counts of wire fraud in violation of 18 U.S.C. § 1343, one count of bank fraud in violation of 18 U.S.C. § 1344, and two counts of submitting false loan applications in violation of 18 U.S.C. § 1014. (Doc. 6). Before trial, the Government elected to dismiss five wire fraud counts, namely counts 2, 3, 4, 6 and 8 of the Indictment. (Doc. 90). Following a jury trial on the remaining ten counts, the jury found Musgrave guilty on Count 1 (the conspiracy count), Count 5 (wire fraud), Count 12 (wire fraud) and Count 13 (bank fraud). (Doc. 111). The jury found Musgrave not guilty on the remaining six counts. (*Id*.)

## II. NEW TRIAL

"[T]he court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Granting a Rule 33 motion for new trial "based on the verdict being against the manifest weight of the evidence is proper when the government has presented sufficient evidence to convict, but the judge disagrees with the jury's resolution of conflicting evidence." *United States v. Lutz*, 154 F.3d 581, 589 (6th Cir. 1998) (citing *Tibbs v. Florida*, 457 U.S. 31 (1982)). Thus, "[w]hen considering a motion for new trial based upon the weight of the evidence, district judges can act in the role of a 'thirteenth juror' and consider the credibility of the witnesses and the weight of the evidence to insure that there is not a miscarriage of justice." *Id*. (citing *United States v. Ashworth*, 836 F.2d 260, 266 (6th Cir. 988)). However, <u>motions for new trial under Rule 33(a) "are granted only 'in the extraordinary circumstance where the evidence preponderates heavily against the verdict.'"</u> *United States v. Hughes*, 505 F.3d 578, 592-93 (6th Cir. 2007). (emphasis supplied).

### A. Conspiracy

Musgrave argues that the court should grant a new trial on the conspiracy count because the jury's conclusion regarding the existence of a criminal agreement to falsify invoices or to misrepresent that all equipment was shipping from Australia is against the manifest weight of the evidence.

"To establish conspiracy, the government must prove an agreement between two or more persons to act together in committing an offense, and an overt act in furtherance of the conspiracy." *United States v. Milligan*, 17 F.3d 177, 182 (6th Cir. 1994) (citation omitted). The government, however, does not need to demonstrate "a formal agreement . . . because acts done with a common purpose can establish an implicit agreement." *Id*. at 182-83

(citations omitted). In fact, "[a] tacit or mutual understanding among conspirators is sufficient to show conspiratorial agreement, and conspiracy may be inferred from relevant and competent circumstantial evidence, such as acts of the conspirators themselves." *Id*. at 183 (citations omitted).

With regard to the falsified invoices, at trial, the Government argued that Musgrave and Goldberg agreed to falsify Rubber Solutions' invoices so that the invoices reflected that ITBVI paid Rubber Solutions $369,569 in cash for the tire recycling equipment. In actuality, Rubber Solutions simply reduced the price of the tire recycling equipment by $369,569. Goldberg testified that the invoices were changed at the request of Musgrave to fraudulently reflect to MFSB and the SBA that ITBVI made an actual cash payment.

Musgrave contends that he had no knowledge that the invoices were falsified or that ITBVI did not actually pay cash to Rubber Solutions. Musgrave argues that Goldberg's testimony regarding an agreement to falsify invoices is contradicted by all other evidence, specifically, the testimony from Jerry Mercer, who stated and strongly emphasized the need and importance of ITBVI having actual "skin in the game," *i.e.*, placing actual money at a risk of loss in the business venture. Musgrave also points to the language of the DITR operating agreement which required ITBVI to actually make a cash injection into DITR.

With regard to the packing list, at trial, the Government argued that Musgrave and Goldberg agreed to falsify a packing list to fraudulently show that all equipment for the tire-recycling plant was being shipped from Australia, when, in fact, the most critical part of the plant, *i.e.*, the shedder, would ship from Oregon at a later date. According to the Government, the conspirators falsified the packing list in an effort to deceive the bank into

releasing the full amount of the loan proceeds to Rubber Solutions per the terms of a letter of credit.

Musgrave argues that Goldberg's testimony regarding an agreement to falsify the packing list is contradicted by other evidence, logic and common sense. Specifically, Musgrave points to the fact that the packing list was completed after the loan was already approved. In addition, Musgrave argues that there was no motive to falsify the packing list because he controlled whether to allow partial shipments of the equipment, and if he knew the shedder was shipping from Oregon, and not Australia, he would have simply allowed payment of the loan proceeds in the event of a "partial shipment."

In viewing all of the evidence presented at trial, and assessing credibility of the witnesses in the role of the "thirteenth juror," the Court cannot find that the evidence preponderates so heavily against the verdict that Musgrave's conspiracy conviction is against the manifest weight of the evidence. Certainly, Goldberg credibility was challenged by the fact that he received some lenity in entering a plea agreement with the Government, the fact that he improperly gained and, perhaps, defrauded Musgrave and DITR to pay debts unrelated to this business transaction, and the fact that he never successfully provided any customer with a working tire shredding plant. However, all of these challenges were presented to the jury, who weighed the testimony of Musgrave and Goldberg and apparently chose to believe Goldberg. The Court does not find Goldberg so inherently incredible that his testimony concerning the invoices and the packing list must not be believed.

Accordingly, based on the foregoing, the Court **DENIES** Defendant's Motion for a New Trial on the Conspiracy count.

### B. <u>Wire Fraud and Bank Fraud</u>

Next, Musgrave argues that the Court must grant a new trial on the wire fraud counts and the bank fraud counts because the manifest weight of the evidence fails to show that he ever knowingly misrepresented or concealed: (1) that ITBVI was not actually injecting cash into the deal; (2) that the shedder was being shipped from Oregon, as opposed to Australia; (3) the source of his cash injection; and (4) Goldberg's ownership interest in ITBVI, and by extension, Goldberg's interest in DITR.

Wire fraud, set forth in 18 U.S.C. § 1343, and bank fraud, set forth in 18 U.S.C. § 1344, both require proof that defendant engaged in "a scheme to defraud." *See United States v. Cunningham*, 679 F.3d 355, 370 (6th Cir. 2012) (citation omitted); *see also United States v. Parkes*, 668 F.3d 295, 301 (6th Cir. 2012) (citation omitted). A scheme to defraud must "include a material misrepresentation or concealment of a material fact." *United States v. Starghill*, No. 06-20336, 2008 WL 2732210, *1 (E.D. Mich. Jul. 10, 2008) (citing Sixth Circuit Pattern Jury Instructions §§ 10.01 and 10.02).

The Court has already addressed the purported misrepresentations or concealments concerning the nature of ITBVI's cash injection and the shipping location of the shedder. Musgrave also contends that his wire fraud and bank fraud convictions are against the manifest weight of the evidence insofar as they are based on the theory that Musgrave misrepresented the source of his own cash injection or the theory that Musgrave concealed Goldberg's ownership of ITBVI.

With regard to the issue of Musgrave's cash injection, the Government argued that Musgrave misrepresented or concealed the true source of the funds he injected into DITR for payment of the tire-shredding plant when he informed MFSB that $230,000 was from cash,

6

$63,000 from his home equity and $50,000 from a home equity line of credit.  In actuality, half of the $230,000 was originally marked as a contribution by Musgrave's step-father, who later told agents that Musgrave borrowed the money from him before testifying at trial that he essentially used the term "borrow" and "gift" interchangeably.  (Doc. 126, PAGEID 1383-1384).  The Court concludes that a conviction based on a misrepresentation or concealment of the source of Musgrave's cash injection is not against the manifest weight of the evidence.

With regard to Musgrave concealing Goldberg's interest in ITBVI, the Court cannot find that the proof at trial preponderates so heavily against such a conclusion that it would be against the manifest weight of the evidence.  Musgrave argued at trial that Goldberg's interest in ITBVI was disclosed to MFSB by virtue of the fact that he gave the DITR Operating Agreement, signed by Goldberg on behalf of ITBVI, to MFSB loan officer Gary Enz well in advance of closing.  However, Enz testified that Musgrave gave him the Operating Agreement only at the time of closing, a time when it was likely that Goldberg's role in ITBVI would go overlooked.  (Doc. 32, PAGEID 995-96).

Musgrave also argues that no reasonable jury could conclude that his answers to questions on the SBA loan 7(a) loan application were false.  However, at the least, evidence showed that DITR's loan application, signed by Musgrave, informed the SBA that no one involved in DITR had any financial interest in a company with which DITR did business.  Such a statement was false because Goldberg had a financial interest in DITR, through ITBVI, and also had financial interest in Rubber Solutions, a business with which DITR did business.  In fact, Musgrave answered this same question affirmatively on a previous Key Bank loan application.  Musgrave argues that giving this prior loan application to Gary Enz at MFSB shows his lack of his intent to conceal Goldberg's dual role in the transaction.

7

However, the fact that Musgrave answered the question affirmatively on the Key Bank application can also be reasonably viewed to demonstrate Musgrave's knowledge that the answer given on the subsequent SBA form was false. Other evidence, such as Musgrave's reluctance to provide the SBA with a financial statement from ITBVI, adds further support to the conclusion that Musgrave sought to conceal Goldberg's role in ITBVI from the SBA.

Certainly, there was significant testimony that Enz made a number of mistakes or oversights in the loan process and did not recall crucial facts about the transaction at trial. However, the Court does not find Enz's testimony to be so incredible that it is unworthy of belief by rational jurors. Accordingly, the Court **DENIES** Defendants' Motion for a New Trial on the wire fraud and bank fraud counts.

### III.  JUDGMENT OF ACQUITTAL

Musgrave also moves for judgment of acquittal pursuant to Fed. R. Crim. P. 29(c). In determining a Rule 29 motion, courts review "the record in the light most favorable to the prosecution, [and] should grant relief only if it is found that upon the record evidence adduced at trial, no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *United States v. General Elec. Co.,* 869 F.Supp. 1285 (S.D. Ohio 1994) (citing *United States v. Abner*, 35 F.3d 251, 253 (6th Cir.1994); *Jackson v. Virginia*, 443 U.S. 307 (1979)). In performing such a review, the court cannot "make credibility determinations, and may not weigh the evidence." *Id*. (citing *United States v. Davis*, 981 F.2d 906, 908 (6th Cir.1992)). To prevail, a defendant must do more than simply show that "there is some evidence in the record to support a finding of not guilty[,]" and, instead, "must demonstrate that, when the evidence is viewed in the light most favorable to the government, no rational trier of fact could find the defendant guilty beyond a reasonable doubt." *Id*.

Viewing the evidence in the light most favorable to the Government, rational triers of fact could have found proof of Musgrave's guilt on the four counts beyond a reasonable doubt. Accordingly, Musgrave's Motion for Judgment of Acquittal pursuant to Rule 29(c) is **DENIED**.[1]

## IV.  CONCLUSION

Based on all of the foregoing, Defendant's Motion for Judgment of Acquittal and for New Trial (Doc. 135) is **DENIED**.

**IT IS SO ORDERED**.

Date:  5/21/13                     /s/ Timothy S. Black
                                   Timothy S. Black
                                   United States District Judge

---

[1] In an effort to preserve the issue for appeal, Musgrave argues that the Court should grant a judgment of acquittal or a new trial because the jury's verdict is inconsistent. However, as acknowledged by Musgrave, the existence of an inconsistent verdict does not provide a basis upon which the Court can grant a judgment of acquittal or a new trial. *See United States v. Chilingirian*, 280 F.3d 704, 710 (6th Cir. 2002) (stating that "[t]he Supreme Court has held that 'a criminal defendant convicted by a jury on one count could not attack that conviction because it was inconsistent with the jury's verdict of acquittal on another count'") (citing *United States v. Powell*, 469 U.S. 57 (1984); *Dunn v. United States*, 284 U.S. 390 (1932)); *see also United States v. Lawrence*, 555 F.3d 254, 261 (6th Cir. 2009); *United States v. Smith*, 172 F.3d 50, 1998 WL 894723, *1 (6th Cir. Dec. 14, 1998). Accordingly, even assuming the jury's verdict is inconsistent, the Court declines to grant relief on this basis.