# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

UNITED STATES OF AMERICA,

          Plaintiff,      :      Case No. 3:11-cr-183

                                        District Judge Timothy S. Black
  - vs -                             Magistrate Judge Michael R. Merz

PAUL DAVID MUSGRAVE,

          Defendant.      :

## SUPPLEMENTAL REPORT AND RECOMMENDATIONS
## ON RESTITUTION

This criminal case is before the Court on Objections by the United States (ECF No. 283) to the Report and Recommendations on Restitution ("Report," ECF No. 282). District Judge Black has recommitted the matter for reconsideration under Fed. R. Crim. P. 59(b)(2). Defendant Paul David Musgrave and Intervenor Barbara Musgrave have responded to those Objections (ECF Nos. 286, 287), making the Objections ripe for consideration.

The Sixth Circuit remanded this case with an order that this Court "hold an evidentiary hearing to determine which assets the United States can reach to enforce the order of restitution." *United States v. Musgrave,* Case No. 15-3388, 664 Fed. Appx. 540 (6th Cir. Nov. 30, 2016)(unpublished; copy at ECF No. 238). The Sixth Circuit also set out the legal standard to be applied to the question on remand. *Id.* at 542-43, principally relying on *Drye v. United States*, 528 U.S. 49 (1999), and *United States v. Craft*, 535 U.S. 274 (2002).

1

The remanded question was referred to the undersigned to conduct the required evidentiary hearing and file a report and recommendations with proposed findings of fact and conclusions of law (Order of Referral, ECF No. 240, PageID 4487). Although the Order of Referral mentions only Fed. R. Crim. P. 59, 18 U.S.C. § 3664(d)(6) expressly authorizes reference to a Magistrate Judge "for proposed findings of fact and recommendations as to disposition, subject to a de novo determination of the issue by the court."

**Proposed Findings of Fact**

After evidence was presented, the Magistrate Judge ordered that the exhibits be filed and that each party also file "proposed findings of fact and conclusions of law in the form required by Fed. R. Civ. P. 52 and Fed. R. Crim. P. 59(b)(1) . . . . Proposed findings of fact shall reference with PageID numbers the place or places in the record that support the proposed finding" (Order for Post-Hearing Briefing, ECF No. 251, PageID 4532).

The Government's Post-Hearing Brief (ECF No. 276) and its Reply Brief fail utterly to comply; there is not a single PageID reference anywhere in either one of them. The Government's opening Brief contains sixty-three proposed findings of fact in numbered paragraphs, none of which has a PageID reference (ECF No. 276, PageID 6344-51).

In preparing the Report, the Magistrate Judge offered proposed findings of fact in narrative form rather than in numbered paragraphs (Report, ECF No. 282, PageID 6411-19). This manner of complying with Fed. R. Civ. P. 52 is a common practice in this Court. See, e.g., *In re: Ohio Execution Protocol Litigation* (*McGuire*), 994 F.Supp.2d 906 (S.D. Ohio Jan. 13, 2014); *In re: Ohio Execution Protocol Litigation* (*Lorraine*), 840 F.Supp.2d 1044 (S.D. Ohio

Dec. 23, 2013). Because the parties proffered proposed findings of fact which the Magistrate Judge ultimately found not material, the proposed findings of fact in the Report are prefaced with this language:

> In constructing this set of factual findings, the Magistrate Judge has included every finding proposed by any of the parties which is appropriately supported by evidence without attempting to decide its relevance or materiality; those questions are reserved for the analysis section below.

(Report, ECF No. 282, PageID 6411.)

In its Objections, the Government criticizes the Report for not having adopted its proposed findings of fact numbered 18, 19, 25, 27, 28, 31, 32, 33, 45, 52, 53, 59, and 62 (Objections, ECF No. 283, PageID 6432-34). The following table sets forth the Government's proposed findings assertedly omitted from the Report and the treatment of that proposed finding in the Report.

| Government Proposed Finding | Related proposed finding in the Report |
|---|---|
| **No. 18** In conjunction with opening said accounts, Mrs. Musgrave executed a limited power of attorney form, authorizing the defendant to serve as her "attorney-in-fact" on each of the three said TD Ameritrade accounts. | On May 26, 2011, Barbara Musgrave gave David a limited power of attorney for her three TD Ameritrade accounts. (Report, ECF No. 282, PageID 6415.) |
| **No. 19** This limited power of attorney specifically authorized the defendant to act as her attorney-in-fact, to wit: to act as her agent *"to buy, sell, and trade stocks, bonds, and any other securities and/or contracts relating to the same on margin or otherwise in accordance with your terms and conditions for (Mrs. Musgraves's) account . . . . In all such purchases, sales or trades (TD Ameritrade) [is] authorized to follow the instructions of my Agent in every respect concerning my account with you; and my Agent is authorized to act for* | David Musgrave's authority under this POA is limited to the purchase and sale of securities as Barbara Musgrave's agent; he has no authority to make any transfers to himself or otherwise engage in self-dealing. Barbara Musgrave did not execute the section of this form POA permitting David Musgrave to receive a fee from the account and no evidence was presented at the hearing that he had ever withdrawn any funds from any of these accounts or had any portion of them transferred to himself. (Report, ECF No. 282, PageID |

3

| | |
|---|---|
| *me and on my behalf in the same manner and with the same force and effect as I might or could do with respect to such purchases, sales or trade . . . .* " | 6415-16.) |
| **No. 25** The defendant has continually enjoyed the right to exclude third parties from said premises. | Nothing in the cited testimony supports this proposed finding of fact except for the conclusory opinion of Susan Sigler that Mr. Musgrave had then apparent right to exclude others from the residential property. (Tr. ECF No. 264, PageID 6216.) That is a subject on which she was not competent to testify. There was no testimony that Mr. Musgrave ever actually excluded anyone. |
| **No. 27** The defendant has never entered into had any rental agreement with his spouse nor paid her rent in order to continue to occupy this residence. | While Mr. Musgrave admitted on cross-examination that he does not pay his wife rent to live in their marital home (Tr., ECF No. 263, PageID 5869-70), this fact is immaterial. |
| **No. 28** The residence's natural gas utility account has always remained in the defendant's name. | This proposed finding is supported the evidence and is hereby adopted. |
| **No. 31** On or about November 16, 2016, the couple jointly purchased a homeowner's insurance policy from *Auto-Owners Insurance Co.* for said residence. | This proposed finding is supported the evidence and is hereby adopted. |
| **No. 32** The defendant has routinely paid his wife $2,600 a month from his Wright-Patt Credit Union (WPCU) personal checking account to help defray monthly residential maintenance expenses. | After paying his credit card and monthly restitution amounts, David Musgrave contributes approximately $2,600 per month toward the $13,000 total. The money is paid by check drawn on David Musgrave's Wright-Patt Credit Union account and deposited into Barbara Musgrave's Charlotte Metro Credit Union account. After deduction of the amounts paid separately by David Musgrave (monthly restitution and credit card payment) and the amounts paid separately by Barbara Musgrave (mortgage, real estate taxes, property insurance, homeowner's association fee, car loan, and legal fees), the Musgrave's consolidated monthly expenses total approximately $5,200. (Report, ECF No. 282, PageID 6417.) |
| **No. 33** This $2,600 monthly payment is deposited into Mrs. Musgrave's Charlotte Metro Credit Union (CMCU) checking account from which she pays the residence's monthly household bills along with the $1,913.79 | *Id.* |

| | |
|---|---|
| monthly mortgage payment to Wells Fargo Bank. | |
| **No. 34** On or about January 13, 2010, Mrs. Musgrave purchased and titled in her name a 2008 Harley Davidson Model FLTR motorcycle. | On January 13, 2010, Barbara Musgrave purchased and titled in her name a 2008 Harley Davidson Model FLTR motorcycle. (Report, ECF No. 282, PageID 6417.) |
| **No. 45** The couple jointly hold a motor vehicle insurance policy on said vehicle from *Auto-Owners Insurance Co.* | The evidence supports a finding that both Paul and Barbara Musgrave are listed as insureds on this policy (Tr. ECF No. 263, PageID 5879). Mr. Musgrave was unsure whether he contributed to the premiums or not. *Id.* |
| **No. 52** As of May 2017, the defendant is eligible to draw $1,140.70 in monthly social security retirement benefits. The defendant testified he has no present intention of filing for these benefits prior to turning 70 years of age. | As of May 2017, David Musgrave is eligible to draw $1,140.70 in Social Security retirement benefits, but testified he does not intend to apply for such benefits until reaching seventy years of age. (Report, ECF No. 282, PageID 6418.) |
| **No. 53** The defendant further testified he is unwilling to contribute anything more than the minimum required amount of said benefits toward restitution. | Defendant testified that he was willing to have any Social Security benefits he may receive included in the calculation of his income, but not to contribute more of them toward restitution than required by law because "I have to live." (Tr. ECF No. 264, PageID 5910.) |
| **No. 59** Mrs. Musgrave's present version of her Last Will and Testament provides in a trust provision, that her estate assets will be made available to the defendant following her death. | "On April 17, 2017, Barbara Musgrave changed the listed beneficiary on her life insurance policy from David Musgrave to her three adult children. Soon thereafter David and Barbara Musgrave executed new wills with accompanying irrevocable trusts. Barbara Musgrave's will lists her three adult children as primary beneficiaries of her estate." (Report, ECF No. 282, PageID 6418.) Susan Sigler testified that it was her understanding of the estate documents that, after Mrs. Musgrave's death, Defendant would have her assets available to him as well as any income those assets generated. (Tr., ECF No. 264, PageID 6121.) |
| **No. 62** Between 2013 and 2017, the defendant significantly reduced his *pro rata* portion of secured liabilities associated with his closely held businesses GMD Industries and M&M Investments by in excess of $406,000. | This finding is supported by Ms. Sigler's testimony and is hereby adopted. (See Tr., ECF No. 264, PageID 6214.) |

**Proposed Conclusions of Law**

The parties were also ordered to file proposed conclusions of law. The Report states "the Magistrate Judge has included every proposition of law requested by any party which is supported by appropriate authority, without implication about their applicability." (ECF No. 282, PageID 6418-19.) The Government objects and seeks the inclusion in this Supplemental Report of its proposed conclusions of law 1, 6, 10, 12, 14, 16, 26, and 27 (Objections, ECF No. 283, PageID 6436). Rather than attempting to decide whether these eight abstract propositions of law are accurate, this Supplemental Report will analyze the parties' proposed applications of the law in the context of this case.

# Analysis

At the time of the evidentiary hearing, the Government relied heavily on a "nominee" theory, to wit, that Barbara Musgrave held the assets the Government seeks to reach as David Musgrave's nominee, much as drug dealers' mothers and girlfriends hold title to their cars to prevent seizure (Post-Hearing Brief, ECF No. 278, *passim*). The Report rejected that theory, relying on Judge Marbley's analysis in *United States v. Toler*, 666 F.Supp.2d 872, 883 (S.D. Ohio 2009). In its Objections, the Government makes no attempt to resurrect the nominee theory, but switches to a claim that David Musgrave is the equitable owner of the assets in his spouse's name.

The Government's Objections begin with the historical distinction of courts of law and court of equity and contend "[t]he historical distinction between "law" and "equity" remains important today when the case involves such issues as "legal title" and an "equitable title," and these two groups of ownership rights may be held by different people." (Objections, ECF No. 283, PageID 6436.)

It follows this assertion by noting that in equity judges are the triers of fact. *Id.* But it also claims that the evidentiary hearing here is an equity proceeding, citing *Drye, supra*, and *Willard v. Tayloe*, 75 U.S. 557 (1869); *McPherson v. Buick Motor Co.*, 217 N.Y. 382 (1916)(Cardozo, J.), and Judith Resnik, "Constricting Remedies: The Rehnquist Judiciary, Congress and Federal Power," Indiana Law Journal, Winter/Spring 2003, p. 250, note 139 (Objections, ECF No. 283, PageID 6437).

The cited authorities do not support the equitable ownership theory. In *Drye* the Supreme Court decided that, while state law allowed a person to disclaim an inheritance, federal law would determine whether that inheritance was "property" or a "right to property" within the meaning of the federal tax lien statute, 26 U.S.C. § 6321. Nothing in *Drye* suggests that the exercise of making that determination is one in equity; the word "equity" does not occur in the opinion.

*Willard v. Tayloe* stands for the unexceptionable proposition that the remedy of specific performance for breach of contract "is not a matter of absolute right to either party; it is a matter resting in the discretion of the court, . . . ." 75 U.S. at 565. But there is no breach of contract issue in this case. David Musgrave could not obtain a decree in equity forcing his spouse to transfer title to the marital residence to him. If the parties were to divorce, a domestic relations

7

court, whose jurisdiction derives remotely from English Chancery, might compel some division of the value of the residence, but only on the basis of the marital relationship.

*McPherson* is Justice Cardozo's famous innovation signaling the end of the privity of contract requirement in breach of warranty of manufactured goods, but has no application here. Professor Resnik's article criticizes the Rehnquist Court's restrictions on federal judicial power, but says nothing about orders of restitution in criminal cases.

The Government then clearly discloses the nature of its claim: "The Government's theory remains that the defendant enjoys a *de facto* equitable ownership and/or controlling interest in certain family assets which are legally titled in his wife's name." (Objections, ECF No. 283, PageID 6437.) It argues the key concept under the Mandatory Victim Restitution Act is whether any assets are "jointly controlled," as distinguished from "jointly owned" or "lawfully controlled." *Id.* at PageID 6438.

The Report quotes the relevant statutory language as follows:

> In formulating a restitution order the Court is required to consider:
> (A) the financial resources and other assets of the defendant including whether any of these assets are jointly controlled;
> (B) projected earnings and other income of the defendant; and
> (C) any financial obligations of the defendant, including obligations to dependents.

(ECF No. 282, PageID 6419, quoting 18 U.S.C. § 3664(f)(2).) The Government cites no case authority interpreting the "jointly controlled" phrase as applying to property owned by a spouse in her name alone which she allows a defendant to use, even at will.

The Report cites *United States v. Dann,* 652 F.3d 1160 (9th Cir. 2011), for the proposition that a restitution order may be enforced only against property that is the defendant's under the

8

relevant state law.  Because of their residence in both Ohio and North Carolina at relevant times, the Report found both States' laws were applicable, but the result is the same:  both States protect the right of a woman to hold property, real and personal, in her own name.  All of the assets the Government seeks to reach -- the couple's residence in Waxhaw, North Carolina; the 2016 Honda automobile; and the three Ameritrade investment accounts – have always been in Barbara Musgrave's name.  As an intervenor, she proved to the Magistrate Judge's satisfaction that she purchased those assets with money from sources (employment and inheritance) that had always been her personally and never her husband's.

The Report concluded by recommending that the Court order Mr. Musgrave to pay $2,000 per month toward the restitution balance.  The Objections contend "[t]he Report provides absolutely no analysis or rational [sic] explaining why this amount is either appropriate or otherwise justified by the evidence. . . ."  (ECF No. 283, PageID 6438.)  But that is the amount the District Judge previously ordered Defendant to pay on a monthly basis, the amount he has been paying, and the amount he concedes he can continue to pay.  No evidence was offered of any improvement in his financial situation since the prior order was entered.

The Government's Objections criticize the Report for "discount[ing] the unrebutted expert testimony of Ms. Sigler wherein she opines 'there is no way Barbara Musgrave could have amassed the assets in her name without contribution from her husband.'"  (ECF No. 283 quoting Report, ECF No. 282 at PageID 6425.)  The Objections then recite a page and a half of documents Ms. Sigler testified she reviewed.  *Id.* at PageID 6439-40.

Relying on *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), the Magistrate Judge found Ms. Sigler's conclusion unpersuasive because she offered no explanation, scientific or otherwise, of how her

9

conclusion follows from the evidence she examined. Part of what the Supreme Court aimed at in this line of cases is the practice of "qualifying" someone as an expert and then letting them give an opinion which is not shown to be related to the evidence in the case. Ms. Sigler has much experience as a mortgage fraud investigator, but she is not and did not pretend to be a forensic accountant.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge again respectfully recommends that the Court enter a restitution order requiring David Musgrave to pay $2,000 per month and that the supersedeas bond be dissolved and the cash returned to Barbara Musgrave who posted it.

January 9, 2018.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).